# EXHIBIT A

## PLAINTIFFS' EMERGENCY MOTION
## TO REMAND

*Sean F., et al. v. Board of Education of Homewood*
*Case No. 2008 CV 252*

STATE OF ILLINOIS      )
                                ) SS
COUNTY OF COOK        )

CH-2301

DEC 28 2007

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

SEAN F. and JENNIFER F., individually and as   )
next friends of SEBASTIAN F., a minor,       )
                    Plaintiffs         )
                                 )
         v.                     )     No.   07 CH 37098
                                 )
BOARD OF EDUCATION OF HOMEWOOD   )
SCHOOL DISTRICT #153,          )
                 Defendant.     )

## AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME the Plaintiffs, SEAN F. and JENNIFER F., individually and as next friends of SEBASTIAN F., a minor, by and through their attorneys, Whitted, Cleary & Takiff, LLC, and as their Amended Verified Complaint for Declaratory and Injunctive Relief state as follows:

*PARTIES*

1.    Plaintiffs, Sean F. and Jennifer F., are the biological parents of Sebastian F. Jennifer F. and Sebastian F. currently reside at 1355 187th Street, Homewood, Cook County, Illinois, with Jennifer F.'s grandmother, Elene Bobele. Sean F. , the non-residential father, resides at 317 Stonington Avenue, Beecher, Will County, Illinois 60401.

2.    Defendant, the Board of Education of Homewood School District #153 (*hereinafter* "District 153" or "Board of Education"), Cook County, Illinois is a body politic and corporate, a public school district organized and operated pursuant to the Illinois School Code, 105 ILCS 5/10-1 *et. seq.*

EXHIBIT

tabbies

A

1

3.     District 153's Board of Education consists of seven members elected by the voters residing in District 153. 105 ILCS 5/10-4. All of its members are required to support the Constitution of the United States and the Constitution of the State of Illinois and to faithfully discharge the duties of their office. Illinois Constitution, Article XIII, § 3.

4.     District 153 operates four schools, Willow School, Churchill School, Millennium School, and James Hart School, and serves students from pre-kindergarten through eighth grade. The administrative offices of District 153 are located at 18205 Aberdeen Street, Homewood, Cook County, Illinois 60430.

5.     District 153 may be sued in all courts and places where judicial proceedings are had pursuant to the Illinois School Code, 105 ILCS 5/10-2.

*JURISDICTION*

6.     Pursuant to 735 ILCS 5/3-104, jurisdiction in the Circuit Court of Cook County is proper in this matter as it relates to the review of a final administrative decision of the Board of Education. On November 15, 2007, an administrative hearing was conducted on the residency of Sebastian F. On November 19, 2007, the administrative hearing officer concluded and recommended that Sebastian F. is not a resident of District 153. On December 10, 2007, District 153's Board of Education met and concluded Sebastian F. is not a resident of District 153. On December 13, 2007, the Board of Education issued a letter informing Sean F. and Jennifer F. of its decision.

*VENUE*

7.     Pursuant to 735 ILCS 5/3-104, venue is proper in this action to review the final administrative decision of the Board of Education of Homewood School District #153 as it is commenced in the Circuit Court of Cook County in which the administrative hearing

was held, in which Plaintiff Jennifer F. resides with her minor son, Sebastian F., and in which the Defendant, District 153, is situated.

## UNDERLYING FACTS

8.    Sebastian F. is six years old and was born on July 5, 2001.

9.    Sean F. and Jennifer F. are the biological parents of Sebastian F. and are amicably divorced and live apart. The Judgment of Dissolution of Marriage was finalized on March 15, 2005.

10.    Jennifer F. and Sean F. have joint custody of Sebastian F. and, per the Judgment of Dissolution of Marriage, the primary residence for Sebastian F. is with Jennifer F. (Exhibit A)

11.    Jennifer F. is a pediatric and neonatal transport nurse employed at Advocate Christ Medical Center located at 4440 West 95th Street, Oak Lawn, Illinois 60453. She is a Registered Nurse and specializes in neonatal intensive care for premature and extremely ill infants. In order to be a pediatric and neonatal transport nurse she is required to have three years of intensive care pediatric experience and undergo a number of certifications.

12.    Jennifer F.'s job duties as a pediatric and neonatal transport nurse include going to outlying hospitals via ambulance or helicopter to pick up patients being transferred to Advocate Christ Medical Center for care. Jennifer F. stabilizes the infant at the transferring facility, provides stabilization and care during transport, and transfers care upon arrival to Advocate Christ Medical Center.

13.    Jennifer F. is one of three pediatric and neonatal transport nurses who work a twelve hour night shift at Advocate Christ Medical Center. These three nurses divide up

3

the week as follows: one nurse works two nights; a second nurse works two nights; and the third nurse works three nights.

14.    As of November 2007, two of the day shift pediatric and neonatal transport nurses have been unable to work. One nurse broke her hand on the job and is on workman's compensation. She has not been cleared to return. The other nurse is currently on maternity leave and is due to return in approximately two months. As a result, the three pediatric and neonatal transport night shift nurses are absorbing these day shifts in addition to their night shifts.

15.    As such, Jennifer F. is scheduled for three or four twelve hour shifts per week. She is required to work one weekend each month. Jennifer F.'s shifts are rotating and do not fall on the same nights each week and the shifts vary week to week. In addition, Jennifer F. could be called in to work an unscheduled shift if she is needed.

16.    Jennifer F. and Sebastian F. currently reside at 1355 187th Street, Homewood, Cook County, Illinois, with Jennifer F.'s grandmother, Elene Bobele.

17.    Jennifer F. and Sebastian F. have resided at that location since August of 2007.

18.    Elene Bobele has resided at that residence for 40 plus years.

19.    Jennifer F.'s address falls within the district boundaries of Defendant, Board of Education of Homewood School District #153.

20.    Sean F. is the non-residential parent of Sebastian F.

21.    Sean F. is employed full-time as a firefighter and paramedic. He has been so employed since 2003.

22.    Sean F. works seven days a week at the fire department on a rotating shift basis. Meaning, Sean F. works a twenty-four (24) hour shift and has the next forty-eight (48) hours off. This pattern repeats throughout the week.

23.    In the case of an emergency or an out-of-control fire, Sean F. could be called in to work on an as needed basis.

24.    Sean F. resides at 317 Stonington Avenue, Beecher, Will County, Illinois 60401.

25.    Sean F.'s address falls within the district boundaries of Beecher School District 200-U located at 538 Miller Street, Beecher, Will County, Illinois 60401.

26.    On the nights that Jennifer F. works at Advocate Christ Medical Center, either Sean F. or Jennifer F.'s mother, Karan Thomas, care for Sebastian F. Who will care for Sebastian F. depends on Sean F.'s employment schedule at the fire department. For example, if Jennifer F. works three night shifts, Sebastian could spend two nights with Sean F. at his residence and one night with Karan Thomas at her residence or vice versa. The same is true if Jennifer F. works four night shifts.

27.    Sebastian F. does not normally spend more than two weeknights with Sean F. because of Jennifer F.'s work schedule.

28.    Sebastian F. does not normally spend more than two weeknights with Karan Thomas because of Jennifer F.'s work schedule.

29.    Despite Jennifer F.'s rotating work schedule, Sebastian F. spends the majority of his nights with his mother at the 1355 187th Street, Homewood, Cook County, Illinois, address as compared to the amount of nights he spends with his father or his maternal grandmother.

30.    Karan Thomas resides at 14930 Parkside, Harvey, Cook County, Illinois 60426.

5

31.    Karan Thomas' address falls within the district boundaries of Harvey School District 152 which is located at 16001 South Lincoln Avenue, Harvey, Cook County, Illinois 60426.

32.    Sebastian F. is a *bona fide* resident of District 153, the district of residence of his residential parent.

33.    Sebastian F. has been a first grade student at Willow School since the beginning of the 2007-2008 school year. Jennifer F. enrolled Sebastian F. in the summer of 2007 and provided her residential address as 1355 187th Street, Homewood, Cook County, Illinois, 60430. (Exhibit B)

34.    On November 5, 2007, District 153 sent Sean F. a Notice of Disenrollment letter regarding Sebastian F. (Exhibit C)

35.    Sean F. and Jennifer F. challenged the Notice of Disenrollment and on November 15, 2007, a "residency hearing" for Sebastian F. took place at the District 153 Administration Center.

36.    Mr. Joel DeTella Esq. of Hauser, Izzo, DeTella & Petrarca, LLC, was unilaterally appointed as the Hearing Officer by District 153's Board of Education to review the residency status of Sebastian F.

37.    Mr. Joel DeTella did, in fact, act in the capacity of hearing officer during the residency hearing.

38.    On November 19, 2007, Mr. Joel DeTella sent a copy of his Report to Jennifer F. at her 1355 187th Street, Homewood, Illinois, address. In the Report, Mr. Joel DeTella found that Sebastian F. is not a legal resident of District 153 because he is outside of

District 153 boundaries 3 to 4 days per week and, thus, does not spend the majority of the week at Jennifer F.'s home in Homewood, Illinois. (Exhibit D)

39.    Jennifer F. received a copy of the Hearing Officer's Report via U.S. Mail on Monday, November 26, 2007. (Exhibit E)

40.    According to the Hearing Officer's Report, and pursuant to 105 ILCS 5/10-20.12b(c), Sean F. and/or Jennifer F. had five days upon receipt of the findings of the hearing officer to file written objections to the findings with the School Board by sending the objections to the Superintendent of District 153.

41.    On November 26, 2007, Sean F. contacted the Superintendent of District 153, Dale E. Mitchell, to discuss his objections to the Hearing Officer's Report. Furthermore, Sean F. requested the residency matter regarding Sebastian F. be placed on the agenda for a school board meeting. Superintendent Mitchell informed Sean F. that he should send a letter to the attention of Superintendent Mitchell and stated that the residency matter would not be addressed at the November 26, 2007 District 153 Board of Education meeting. Further, Superintendent Mitchell stated that the Sebastian F. residency matter would be heard at the December 10, 2007 District 153 Board of Education meeting.

42.    On November 26, 2007, pursuant to his discussion with Superintendent Mitchell, Sean F. sent a letter addressed to Superintendent Mitchell requesting the residency matter of Sebastian F. be placed on the Board of Education's agenda.

43.    On December 10, 2007, the Board of Education, in closed session, discussed the residency matter of Sebastian F. and concluded that Sebastian F. is not a resident of District 153. On information and belief, an audio recording was made of this board meeting. Both Sean F. and Jennifer F. spoke at the board meeting and were questioned

by board members. The board meeting regarding the residency of Sebastian F. and all reports memorializing said meeting, in any form, including audio and electronic, are included as part of the administrative record.

44.    On December 13, 2007, Superintendent Dale Mitchell sent a letter to Sean F. and to Jennifer F. at their respective residences informing then that the Board of Education's decision to disenroll Sebastian F. was effective as of December 11, 2007. (Exhibit F)

45.    In mid-November of 2007, Sean F. contacted the administrative office of Beecher School District 200-U, spoke with an administrator, described the residency scenario of Sebastian F., and was informed that Sebastian F. could not be enrolled in Beecher School District 200-U as he is not a resident. (Exhibit G)

46.    Sebastian F. has not been permitted to attend first grade at the Willow School located within District 153's boundaries since Tuesday, December 11, 2007.

47.    If Sebastian F. attempts to return to his first grade class at the Willow School, Superintendent Mitchell of District 153 has indicated that he will have Sebastian F. forcibly removed from the premises by the Homewood Police Department. (Exhibit G)

48.    On December 17, 2007, Superintendent Dale Mitchell sent a letter to Plaintiffs' attorneys, Whitted, Cleary & Takiff, LLC. This letter indicates that the hearing officer for Sebastian F.'s residency hearing, Mr. Joel DeTella, is also the attorney who represents District 153. (Exhibit H)

49.    On December 20, 2007, Plaintiffs' attorney spoke with District 153's attorney, Christopher Petrarca, and requested a recording of the December 10, 2007, Board of Education meeting. Mr. Petrarca stated that he would "check" with his partner, Joel

8

DeTella, who was also the hearing officer, regarding a copy of the recording.  To date, no recording has been tendered to Plaintiffs' attorneys.

50.    On information and belief, facts and information not contained in the residency hearing transcript or attached exhibits were discussed at the Board of Education meeting on December 10, 2007, and are contained on the audio recording.

### COUNT I – PETITION FOR WRIT OF CERTIORARI TO THE CIRCUIT COURT TO OBTAIN REVIEW OF THE ADMINISTRATIVE DECISION

51.    Plaintiffs restate Paragraphs 1-50 for paragraph 51 of their Amended Verified Complaint for Declaratory and Injunctive Relief.

52.    Pursuant to 735 ILCS 5/3-102 of the Administrative Review Law, Plaintiffs, Sean F. and Jennifer F., seek judicial review of the residency decision regarding Sebastian F. made by Joel DeTella, District 153's unilaterally appointed hearing officer.

53.    On November 15, 2007, a residency hearing was held pursuant to 105 ILCS 5/10-20.12b of the Illinois School Code.   On December 10, 2007, District 153's Board of Education met and determined that Sebastian F. is not a resident of District 153.

54.    Pursuant to 105 ILCS 5/10-20.12b(c), the decision of the school board is final.

55.    There is no express adoption of the Administrative Review Law in 105 ILCS 5/10-20.12b.

56.    In accord with *Russell v. Department of Natural Resources*, 183 Ill.2d 434, 701 N.E.2d 1056 (1998), where the statute conferring power on an administrative agency does not expressly adopt the Administrative Review Law and provides for no other form of review outside of the agency, the common law writ of *certiorari* may be utilized to obtain circuit court review of administrative proceedings. *Id.* at 440-441. See *Hanrahan*

9

*v. Williams,* 174 Ill.2d 268, 272, 220 Ill.Dec.339, 673 N.E.2d 251 (1996); *Stratton v.*
*Wenona Community Unit District No. 1,* 133 Ill.2d 413, 427, 141 Ill.Dec. 453, 551
N.E.2d 640 (1990); *Smith v. Department of Public Aid,* 67 Ill.2d 529, 540-541, 10 Ill.
Dec. 520, 367 N.E.2d 1286 (1977).

57.     The common law writ of *certiorari* was developed to provide a means whereby a
petitioner who was without avenue of appeal or direct review could obtain review over
action by a court or other tribunal exercising quasi-judicial functions. *People ex. rel.*
*Loomis and Bronson  v. Wilkinson,* 13 Ill. 660 (1852).

58.     Other provisions of the Illinois School Code do adopt the Administrative Review
Law, although 105 ILCS 5/10-20.12b does not.  Should the Cook County Circuit Court
find that the Administrative Review Law is applicable in this matter, Plaintiffs
respectfully request that this Court treat this pleading as a complaint to review an
administrative decision pursuant to the Administrative Review Law.

59.     Pursuant to 735 ILCS 5/3-104, jurisdiction to review final administrative
decisions is vested in the Circuit Courts.

60.     The general function of the circuit court on judicial review of an administrative
hearing is not to reweigh the evidence, but to determine if the decision was arbitrary or
capricious, or contrary to the manifest weight of evidence. *Foster v. Civil Service*
*Commission* 255 Ill.App.3d 30, 34, 627 N.E.2d 285, 289 (1st Dist. 1993).  See, *Murdy v.*
*Edgar,* 103 Ill.2d 384, 83 Ill.Dec.151, 469 N.E.2d 1085 (1984); *McCafferty v.*
*Department of Central Management Services,* 182 Ill.App.3d 298, 291, 130 Ill.Dec.741,
537 N.E.2d 1070 (1989.)

61.     The Board of Education's decision was arbitrary and capricious.

62.    The procedures required by law were not followed.

63.    The Board of Education questioned both Sean F. and Jennifer F. at the December 10, 2007 board meeting.

64.    The Board of Education wrongfully determined that Sean F. is the residential parent of Sebastian F. despite evidence and testimony to the contrary.

65.    The Board of Education wrongfully determined that Sebastian F. stays overnight with Sean F. for the majority of the week despite evidence and testimony to the contrary.

66.    The Board of Education wrongfully determined that Sebastian F. stays overnight and out of District 153 for the majority of a month, being sixteen days, and within District 153 for a minority of the month, being fifteen days.

67.    The hearing officer's decision recommending that Sebastian F. is not a resident of District 153 was contrary to the manifest weight of the evidence.

68.    There is no adequate remedy at law.

WHEREFORE, Plaintiffs, Sean F. and Jennifer F., request the following relief:

A.    An order vacating the December 10, 2007 decision of District 153's Board of Education;

B.    An order that Sebastian F. is a *bona fide* resident of Homewood School District #153;

C.    An order against Defendant, Board of Education of Homewood School District #153, that it must enroll Sebastian F. as a student;

D.    Attorney fees and costs for pursuit of this action;

E.    Such other or further relief as the Court may deem just and proper.

## COUNT II - DECLARATORY JUDGMENT

69.     Plaintiffs, Sean F. and Jennifer F., reallege paragraphs 1-68 and incorporate them by reference as set forth in their entirety as paragraph 69 of Count II of this Complaint.

70.     The actions of District 153 threaten real and immediate harm to Sebastian F. as he is not receiving an education and cannot attend any other school district in the State of Illinois to receive an education because he is not a resident of any other school district.

71.     The actions of District 153 are in violation of the laws of the State of Illinois and the Illinois Constitution.

72.     Plaintiffs, Sean F. and Jennifer F., seek relief from this Court in the form of a Declaration of their Rights so as to prevent substantial harm to them and to their son, Sebastian F.

**WHEREFORE**, the Plaintiffs, SEAN F. and JENNIFER F., respectfully request this Court enter judgment in favor of Plaintiffs and against Defendant, BOARD OF EDUCATION OF HOMEWOOD SCHOOL DISTRICT #153, as follow:

A.     A declaration that the actions of the Board of Education of Homewood School District #153 in removing and refusing to re-enroll Sebastian F., a student residing within the boundaries of the school district, are inconsistent with, and in violation of, the laws of the State of Illinois;

B.     A declaration that the actions of District 153 in threatening to have Sebastian F. forcibly removed from the premises of the Willow School by the Homewood Police Department is in contravention to the laws of the State of Illinois;

C.     A declaration that Sebastian F. is a *bona fide* resident of District 153;

12

D.    An award of reasonable costs and attorneys' fees in connection with this

        action;

E.    All such other and further relief as the Court may deem just and proper.

*COUNT III – INJUNCTIVE RELIEF*

73.    Plaintiffs, Sean F. and Jennifer F., reallege paragraphs 1-72 and incorporate them

by reference as set forth in their entirety as paragraph 73 of Count III of this Complaint.

74.    District 153 is not within its rights to refuse admission to Sebastian F.

75.    Sebastian F. will suffer irreparable harm if he is not permitted to attend first grade

in District 153 during the 2007-2008 school year as he will not be receiving an education.

76.    Plaintiffs, Sean F. and Jennifer F., are likely to succeed on the merits of their

claim because Jennifer F. has been and continues to be a *bona fide* resident of District

153, is the custodial parent of Sebastian F., and provides the primary regular fixed

nighttime abode for Sebastian F.

77.    Plaintiffs, Sean F. and Jennifer F., do not have an adequate remedy at law because

the remedy they seek is the return of Sebastian F. to his first grade class at Willow School

in District 153 and his reenrollment as a *bona fide* resident and student.

**WHEREFORE**, Plaintiffs, SEAN F. and JENNIFER F., respectfully request this

Court enter judgment in favor of Plaintiffs and against Defendant, BOARD OF

EDUCATION OF HOMEWOOD SCHOOL DISTRICT #153, and give Plaintiffs the

following relief:

A.    An Order that Sebastian F. is a *bona fide* resident of Homewood School

        District 153;

13

B.    An Order that directs the Board of Education and the Superintendent of

District 153 to reinstate Sebastian F. as a properly enrolled student of

District 153;

C.    An award of reasonable costs and attorneys' fees in connection with this

action;

D.    All such other and further relief as the Court may deem just and proper.


Respectfully submitted,


By:    _____
       Jennifer L. Hansen
       Attorney for Sean F. and Jennifer F.


Jennifer L. Hansen
Attorney No. 6271638
Brooke R. Whitted
Attorney No. 3008509
Neal E. Takiff
Attorney No. 6256990
Whitted, Cleary & Takiff, LLC
Firm No. 38069
3000 Dundee Road, Suite 303
Northbrook, Illinois 60062
Phone: 847-564-8662
Fax: 847-564-8419
jhansen@wct-law.com
whittedlaw@aol.com
ntakiff@wct-law.com
N:\Clients\Fortson\Pleadings\Complaint for Declaratory and Injunctive Relief.doc

14

## CERTIFICATION

Under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure, the undersigned, Jennifer F., certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned, Sean F., certifies as aforesaid that he verily believes the same to be true.

Jennifer F.

Subscribed and sworn before me
on this 17th day of December 2007.

Notary

"OFFICIAL SEAL"
LAURA O'CONNOR
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7/29/2008

## CERTIFICATION

Under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure, the undersigned, Sean F., certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned, Sean F., certifies as aforesaid that he verily believes the same to be true.

_____
Sean F.

Subscribed and sworn before me
on this 17th day of December 2007.

_____
Notary

"OFFICIAL SEAL"
LAURA O'CONNOR
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7/29/2008

#39160

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

SEAN FORTSON,
Petitioner/Counter-Respondent,                ENTERED

v.                                            MAR 1 5 2005          Case No. 05 D 533

                                  JUDGE MELVIN J. COLE - 1766
JENNIFER FORTSON,                                          Cal.
Respondent/Counter-Petitioner.

## JUDGMENT FOR DISSOLUTION OF MARRIAGE

**NOW IN THIS MATTER COMING** to be heard on ~~SEAN~~ *JENNIFER* FORTSON's *COUNTER-*

Petition for Dissolution of Marriage and being represented by counsel, with ~~Respondent,~~ *PETITIONER*

~~JENNIFER~~ *SEAN* FORTSON having filed ~~a response~~ *HEREIN* and being represented by counsel, both

parties having signed a Stipulation to have this matter heard as an uncontested matter, and

the Court having heard evidence and being fully advised in all premises:

THE COURT FINDS AS FOLLOWS:

       1.    That this Honorable Court has jurisdiction of the parties hereto and the

subject matter hereof in that the Petitioner, SEAN FORTSON, was domiciled within the

County of Cook, State of Illinois for ninety (90) days prior to the filing of his Petition for

Dissolution of Marriage, and that the Respondent, JENNIFER FORTSON, was domiciled

within the State of Illinois, County of Cook, for ninety (90) days prior to the filing of the

Petition for Dissolution of Marriage, and is currently domiciled within the County of Cook,

State of Illinois.

       2.    That the Petitioner and Respondent were lawfully joined in marriage

on November 27, 1998, in Flossmoor, County of Cook, State of Illinois, and that said

marriage was properly recorded in the aforesaid City, County and State.

i

ALL-STATE LEGAL    EXHIBIT    A

3.    That Petitioner is 33 years of age and is employed as a paramedic/ firefighter for Calumet City, Illinois, resides in Riverdale, Illinois and is able to maintain his reasonable financial needs. Respondent is 30 years of age and is employed as a nurse at Advocate Christ Hospital in Oak Lawn, Illinois, resides in Calumet City with the parties' child, and is able to maintain her reasonable financial needs.

4.    That during the course of this marriage, one (1) child was born to the parties, namely, SEBASTIAN FORTSON, born on July 5, 2001, currently age 3. No other child were born to or adopted by the parties during their marriage, and the Respondent is not now pregnant.

5.    That there are no other Petitions for Dissolution of Marriage pending in this jurisdiction or any other jurisdiction. The Respondent has filed a Counter-Petition for Dissolution of Marriage, which is also pending before this Court.

6.    That Petitioner, has established, by competent, material and relevant proof in open court all the allegations and charges contained in his Petition for Dissolution of Marriage, in that he has proven the grounds for a Dissolution of Marriage, based on Irreconcilable Differences.

7.    That the parties have lived separate lives since on or about May 1, 2004, a period in excess of six months. The parties have waived, by stipulation, the statutory two (2) year separation requirement.

8.    That the parties hereto have entered into and executed an Agreement settling between themselves all claims for maintenance, support, property interest and any and all other claims which each may have against the other; and said Agreement in all its terms, is as follows and is incorporated into this Judgment for Dissolution of Marriage.

ii

## MARITAL SETTLEMENT AGREEMENT

**THIS AGREEMENT** made on March 15, 2005 at Chicago, Illinois, by and between SEAN FORTSON, (hereinafter referred to as "HUSBAND" or "SEAN") residing in Cook County, Illinois, and JENNIFER FORTSON, (hereinafter referred to as "WIFE" or "JENNIFER") residing in Cook County, Illinois.

WHEREAS, during the course of this marriage, one (1) child was born to the parties, namely, SEBASTIAN FORTSON, born on July 5, 2001, currently age 3. No other child were born to or adopted by the parties during their marriage, and the Defendant is not now pregnant

WHEREAS, certain irreconcilable and unfortunate differences have arisen between the parties which has resulted in a discontinuation of the marital relationship existing between them. These irreconcilable differences have caused the irretrievable breakdown of the parties' marriage, past attempts at reconciliation have failed, and future attempts would not be in the best interests of the family; and

WHEREAS, the parties have lived separate lives since on or about May 1, 2004, a period in excess of six (6) months.   The parties have waived, by stipulation, the statutory two (2) year separation requirement.

WHEREAS, Husband has filed a Petition for Dissolution of Marriage in the Circuit Court of Cook County, Illinois in Case Number 05 D 533; and said cause of action remains pending and undetermined; and

WHEREAS, each party states that they have received from the other party a proper financial disclosure which is satisfactory to the respective party to whom it has been furnished. Each party represents that they have disclosed full and complete information of their respective assets and liabilities to the other party together with their income and

1

earnings. In the event that a court of competent jurisdiction subsequently determines that either party owned or otherwise possessed property not so disclosed, then the party owning such undisclosed property shall pay to the other party, on demand, 50% of the fair market value of the undisclosed property, measured as of the date of the execution of this the undisclosed ownership; and

WHEREAS, both parties expressly state that they have freely and voluntarily entered into this Agreement of their own volition, free of any duress or coercion and with full knowledge of each and every provision contained in this Agreement and the consequences thereof; that each party states that he and she understands:

    (a)    their legal rights and duties as between the parties;

    (b)    the range of what the Court may order if called upon to decide this case as a contested matter;

    (c)    the legal effect of each provision of this Agreement;

    (d)    the tax ramifications of this Agreement and Settlement; and

    (e)    that both parties understand his and her right to continue litigation that is currently pending and to proceed through procedures of full discovery, issuances of subpoenas, interrogatories, depositions, and other motions regarding discovery and presentation of financial matters.

Each party expressly states that no representation has been made to him or to her by the other party other than what is contained in this Agreement; that the parties, after carefully considering the terms of this Agreement, state that they do not regard it to be unconscionable; and consider this Agreement a just, fair, and equitable intent to be bound by same. Both parties expressly state that they have freely, voluntarily, without force, duress, coercion or intimidation, entered into this Agreement with full knowledge of each and every provision contained in this Agreement and the consequences thereof.

2

WHEREAS, both parties are able bodied and able to maintain employment; and

WHEREAS, without any collusion as to the pending proceedings, or any other proceedings that may be filed between the parties affecting the marital status of the parties, and in the interest of avoiding protracted litigation, the parties consider it to be to their respective best interests to settle, adjust, and compromise between themselves now and forever, the matters of the maintenance for either party, the settlement of the property rights of the parties with respect to both marital and non-marital property, and the disposition of all claims, whether arising by virtue of the marriage of the parties hereto ever had, now has or may have in the future against the other, whether arising under the laws of Illinois or any other State or Country, for or on account of any matter whatsoever; and all rights, whether arising by virtue of the marriage of the parties hereto or otherwise, which each party hereto ever had, now has or may have in the future, or may claim to have whether arising under the laws of Illinois or any other State or Country, in or to any and all property, real, personal or mixed, tangible and intangible, marital and non-marital, heretofore or hereafter owned or possessed by the other party hereto, including without limitation of the foregoing, all inchoate rights and all rights of homestead, inheritance, descent, distribution, community interest and surviving spouse's award.

NOW THEREFORE, in consideration of the foregoing and in consideration of the mutual covenants of the parties hereto, hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which is jointly and severally acknowledged;

3

IT IS HEREBY COVENANTED AND AGREED BY AND BETWEEN ALL

PARTIES HERETO AS FOLLOWS:

### ARTICLE I
### INCORPORATION OF RECITALS

The foregoing recitals are made part of this Agreement.

### ARTICLE II
### JOINT CUSTODY AND PARENTING AGREEMENT

The parties mutually agree and acknowledge that both parents are fit and proper

persons to have the joint care, custody, control and education of the parties' minor child,

SEBASTIAN and it would be in the best interest of SEBASTIAN to award his joint legal

custody to SEAN and JENNIFER pursuant to Section 602.1 of the Illinois Marriage and

Dissolution of Marriage Act. Accordingly, the parties agree that they shall have joint legal

custody of SEBASTIAN, with the primary residence of the child to be with JENNIFER, subject

to SEAN's rights to parenting time pursuant to the terms and provisions of the Joint Parenting

Agreement attached hereto as *Exhibit A*.

### ARTICLE III
### CHILD SUPPORT AND CHILD DEPENDENCY EXEMPTIONS

A.    Child Support Obligation: It is agreed that effective the date of the entry

of the Judgment for Dissolution of Marriage, that SEAN shall pay to JENNIFER, via the use

of a Notice of Withholding, through the Illinois State Disbursement Unit, the semi-monthly sum

of $267.00 as and for child support, which constitutes 20% of his net annual income of

$32,056.00, pursuant to and in accordance with the guidelines set forth in Section 505 of the Illinois

Marriage and Dissolution of Marriage Act. Child support shall be based upon standard deductions

allowable under *750 ILCS §5/505(a)(3)(a) through (h)* inclusive. The payments of child support

shall commence with SEAN's first pay check following entry of a Judgment for Dissolution of

4

Marriage, and shall be payable by SEAN upon receipt of each semi-monthly pay check thereafter as specified herein.

      B.    <u>Length of Obligation</u>:  Child support shall terminate altogether upon the emancipation of the youngest child of the parties.  Emancipation is defined as the occurrence of the first of the following events:

      1.    The child's death.

      2.    The child attaining the age of eighteen (18) years or completion of high school education, whichever later occurs, but in no event beyond the child's nineteenth (19) birthday;

      3.    The child's joining of induction in the armed services of the United States or National Guard;

      4.    The child maintaining a full-time residence outside the home of the parent having primary care of him, exclusive of his residence at a secondary boarding school, camp, or similar facility;

      5.    The child obtaining full-time employment, exclusive of his employment during school vacation periods; or

      6.    Any other emancipating event.

      C.    <u>Day Care/Pre-School Expenses</u>: The parties shall equally divide the cost of the child's day care and/or pre-school attendance.  The parties shall consult before enrolling the child in day care and/or pre-school.  If the Wife presents the Husband with information regarding day care and/or pre-school and the Husband does not object or respond within one (1) week of the receipt of the information about the proposed school/day care center, the Wife shall make the final decision about enrollment, and the parties shall still be obligated to equally divide the cost therefor.  The Wife shall provide a copy of all documents received from the day care/pre-school regarding the child's health and welfare, or regarding any activity for which both parties may participate.  The Husband shall have the option of paying the Wife for said day care/pre-school or of paying directly for same.

      D.    <u>Child Dependency Exemption</u>:  The parties shall divide the child's

dependency exemptions as follows: SEAN shall claim SEBASTIAN as his dependent on his 2004

and all even-numbered tax years thereafter while SEBASTIAN can be claimed as a dependent, so

long as SEAN is current in his payment of child support on December 31 of that tax year. Likewise,

JENNIFER shall claim SEBASTIAN as her dependant on her federal and state income tax returns

for the 2005 and all odd-numbered tax years thereafter while SEBASTIAN can be claimed as a

dependent.

E.      Annual Income Information: SEAN shall provide to JENNIFER, for each tax

year in which he is obligated under this Article, all Forms W-2, 1099/1099R, K-1 or any other forms

showing income earned, by March 1 of each following tax year.

## ARTICLE IV
## LIFE INSURANCE

A.      SEAN covenants and agrees that he will maintain in full force and effect,

until such time as his obligation for the benefit of the minor child pursuant to this Agreement has

been satisfied, the beneficiary designation for his employment benefits from Calumet City with

SEBASTIAN as 100% beneficiary for all widow/child survivor benefits from his employer. He shall

keep this designation in effect until the child is emancipated, or if he attends a full-time post-

secondary school, until he attains the age of twenty-three (23) years, or completes his college

education, whichever shall be the first to occur.

B.      If SEAN leaves his current employment, and the same type of widow/child

survivor benefits are not available from his employment, then SEAN shall immediately obtain life

insurance coverage on his life in an amount not less than $100,000.00, with JENNIFER as trustee

on behalf of the parties' child as 100% irrevocable beneficiary, and he shall continue to maintain

same until the child is emancipated, or in the event the child attends a full-time post-secondary

school, until he attains the age of twenty-three (23) years, or completes his college education,

6

whichever shall be the first to occur.

## ARTICLE V
## HEALTHCARE AND RELATED INSURANCE AND EXPENSES OF CHILD

A.    Medical Insurance: SEAN currently covers the minor child for medical insurance coverage through his employer's insurance. At his expense, he will continue to maintain a policy of medical insurance and any other insurance coverage (i.e. dental, optical) which is available through his employer, or by means of an independent medical insurance policy which is comparable to that now provided for the minor child. If at any time in the future, SEAN is unable to obtain comparable health care insurance for the child, the parties will at that time determine the most cost-effective insurance coverage which is as comparable to the previous insurance for the child as is affordable, and shall obtain and cooperate to maintain said coverage for the child until such time as such comparable coverage again becomes available through SEAN's employer. If the parties must enroll the child in an independent policy or through JENNIFER's employer, SEAN shall pay the cost of the premiums for said insurance coverage. If the insurance covering the child is through an HMO, PPO or other group insurance using a "network" then the parties shall use only those health care professionals within the network, except in the case of an emergency where an "in-network" health care professional is not reasonably available. Further, the parties shall utilize any prescription drug cards or programs available to the parties through the child's insurance coverage as specified above when obtaining medication for the child. If either party unilaterally chooses to take the child to an "out-of-network" health care professional in a non-emergency situation, or fails to utilize the prescription drug cards or programs available to the parties when obtaining medication for the child, then that party shall be solely responsible for the uncovered and unreimbursed medical or other health care expenses for those visits, as well as all prescriptions obtained without use of an available prescription drug card/program.

7

**B.**    <u>Medical Expenses</u>: The parties agree to equally pay for any uncovered and unreimbursed medical, dental, orthodontic, optical and other health related expenses incurred on behalf of the minor child.

**C.**    <u>Health Care Treatment Notification</u>: A party shall notify the other party as to the place, time, date and reason for to taking the child for any non-emergency medical or other health related visit or course of treatment, as well as for any further treatment or prescription as recommended prior to incurring any such expense, as well as prior to signing any agreements for orthodontic work for the child, provided that advance notification shall not be required in cases of emergency where delay may imperil the health or safety of the child. Except in cases of emergency, either party may obtain a second opinion within thirty (30) days, at his or her own expense, as to the medical or other health care needs of a child. In the event the parties are unable to agree upon the extent of their respective obligations under this Article, upon the appropriate classification of a medical or other health care expense incurred on behalf of a child, or upon the medical, dental or optical needs of the child, whether prior or subsequent to incurring such an expense, the parties agree to submit the issue to a qualified mediator for attempted resolution prior to the filing of a petition regarding this issue in a court of competent jurisdiction in a county in which one of the parties resides (except by prior agreement of the parties) for determination upon proper notice, petition and hearing.

**D.**    <u>Length of Obligation</u>: The parties' respective obligations pursuant to this Article for the child shall terminate upon the emancipation of the child, except that in the event the child attends college, university or vocational school, in the school year immediately following graduation from high school, the parties' obligations shall extend until the child attains the age of twenty-three (23) years, or completes his college or university education, whichever shall be the first to occur.

8

E.    <u>Identification Card(s)</u>: When applicable and available, a party shall provide the other with current identification cards in order to enable the other party to identify the child's coverage and shall provide the other with updated identification cards when any cards are issued or when any change in insurance coverage occurs.

**ARTICLE VI**
**EXTRACURRICULAR ACTIVITY EXPENSES OF THE CHILD**

The parties shall equally divide the cost of the expenses associated with the minor child's previously agreed upon extracurricular activity expenses, including, but not limited to tutoring or other lessons, sports, dance, music or other organized group activity in which SEBASTIAN participates. SEAN shall deposit a total of $500.00 per year into a bank account for which JENNIFER shall have access to withdraw monies to pay for said agreed upon extra-curricular activity costs of the child. If the bank account has insufficient funds for payment of a particular agreed upon extra-curricular activity of the child, SEAN shall pay the remainder of his 50% portion directly to JENNIFER prior to the enrollment of the child in the activity for which the money is to be used. Any monies remaining in the extra-curricular activity bank account shall be utilized to pay for the child's college, university or vocational schooling upon the child's graduation from high school. If the child has not attended college, university or vocation schooling by age 21, then the monies remaining in the account shall be provided to the child at that time.

**ARTICLE VII**
**POST-SECONDARY EDUCATION OF THE CHILD**

A.    <u>Decisions Regarding Education</u>: The decisions affecting the post-secondary education of the parties' child, including the choice of college, university or vocational school, shall be made by the parties jointly, and the parties shall consider but shall not be bound by the expressed preference of the child and shall also consider the cost of education and the parents' then financial means and other reasonable criteria. However, a failure by the parties to reach agreement prior to

9

the child's scheduled enrollment date for such schooling shall not waive either party's obligation to contribute to same.

      **B.**    <u>Cost of Education</u>:  The parties agree to participate in the costs of the child attending a college, university or vocational school according to their then financial abilities to pay for said costs, pursuant to the provisions of Section 513 of the Illinois Marriage and Dissolution of Marriage Act or any successive Act thereto.

      **C.**    <u>Conditions for Obligations</u>: The parties' respective obligations are conditioned upon each of the following:

        i.    That the child has at that time the desire and aptitude for a trade school or college/university education, as shown by high school and post-secondary grades, as well as SAT, ACT or other college aptitude tests taken by said child;

        ii.    The trade school or college/university is limited to five (5) consecutive years after graduation from high school, except that the time shall be extended in case of serious illness, but in no event shall such extension go beyond age 23; and

        iii.    Copies of all grade reports of the child are forwarded to each parent by the school upon request of the child and/or parents.

      **D.**    <u>Use of Scholarships and Other Monies</u>:  In the event the child shall be eligible for scholarships, grants or the like, the same shall be used by the child before either party is called upon to pay or contribute to or make up the difference for costs for said education.  Further, the child shall utilize funds from any custodial account or trust fund, certificate of deposit or savings bond(s) available to or belonging to them to help defray the cost of his college, university or vocational school education before the parties have an obligation to contribute to same.  This shall not, however, apply to any such account established by either party or by the child after the date of the entry of a Judgment for Dissolution of Marriage in this matter.

10

E.    Extending Obligations Due to Illness:  The parties' respective obligations under this Article shall be extended in the event that the child's educational pursuit is interrupted by serious illness which prevents the active pursuit of a college, university or vocational school education.  Said obligations shall be extended by a period equal in length to the illness-related interruption or the loss of time in school caused by the interruption, but in no event shall the parties' obligations extend beyond the child's age 23.

## ARTICLE VIII
## PARTIES' MUTUAL WAIVER OF MAINTENANCE

A.    SEAN acknowledges and agrees that he is an able bodied individual capable of supporting himself, and accordingly, hereby waives any right he has to receive maintenance from JENNIFER, now or in the future.  SEAN understands that by waiving his right to receive maintenance from JENNIFER, he is forever barred from seeking spousal support from her in any court, both now or in the future.

B.    JENNIFER acknowledges and agrees that she is an able bodied individual capable of supporting herself, and accordingly, hereby waives any right she has to receive maintenance from SEAN, now or in the future. JENNIFER understands that by waiving her right to receive maintenance from SEAN, she is forever barred from seeking spousal support from him in any court, both now or in the future.

## ARTICLE IX
## MEDICAL INSURANCE COVERAGE FOR PARTIES:

Husband and Wife shall be responsible for their own medical necessities, care, expenses, medical insurance and payment of premiums.  Either party currently covering the other by his/her medical insurance policy through his/her employer will assist the other party in obtaining any forms through that employer for COBRA coverage.

The parties shall cooperate fully with the each other to assist the other party in

11

## ARTICLE XI

## SETTLEMENT OF MARITAL AND PROPERTY RIGHTS

A.    Real Property:

1.    The parties acknowledge and agree that they are the joint owners of real property known as and located at 1390 Forest Avenue, Calumet City, Illinois 60409. Upon the entry of a Judgment for Dissolution of Marriage, subject to the terms as set forth below, JENNIFER shall be awarded the above listed real property as her sole and separate property, free of any claims or interest by SEAN.

2.    Sale of Residence: Within six (6) months following entry of a Judgment for Dissolution of Marriage, JENNIFER shall list the above listed real property for sale with a realtor of her choice, and shall sell same at the price of her choice. Upon the sale of the residence, JENNIFER shall receive 100% of the net sales proceeds as her sole and separate property, free from any claims or interest by SEAN, subject to repayment at that time by JENNIFER, the sum of $2,500.00 to be paid to JENNIFER's parents for money loaned by them to the parties during the parties' marriage. Upon entry of a Judgment for Dissolution of Marriage, SEAN shall tender to JENNIFER a Quit Claim Deed which relinquishes his rights and interest in and to the above listed real property.

3.    Cost of Residence Prior to Sale: Until said real property is sold, JENNIFER shall be solely responsible for the costs of maintaining the property, including but not limited to the mortgage(s), taxes, insurance, utilities and any other such costs associated with the ownership thereof. However, the parties shall equally divide the cost of any agreed upon repairs which are necessary to sell the residence.

4.    Residence in Illinois or Indiana Allowed: The parties agree that either party may move to the State of Indiana if he or she chooses to do so. Further, the parties agree that

13

JENNIFER may remove the child to the State of Indiana if she chooses to do so. If she chooses to do so, she shall provide the new address and telephone numbers to SEAN immediately upon finding out this information so that he is aware of the move prior to its occurrence. If either party moves to Indiana, the parties understand that visitation may occur in either state. The parties shall amend the visitation schedule and travel arrangements to accommodate the move of either party to Indiana to ensure that the child is able to have liberal parenting time with both parties throughout his childhood.

B.    Retirement Plans:

1.    SEAN's Pension and Retirement Plans: The parties acknowledge and agree that SEAN has recently begun earning pension benefits through his employment with the Calumet City Fire Department. The parties further acknowledge and agree that SEAN has recently begun contributing to the Calumet City's 457(b) retirement savings plan. The parties agree that upon entry of a Judgment for Dissolution of Marriage, SEAN's benefits earned in his pension benefits and any balance in his 457(b) retirement saving plan account shall be awarded to him as his sole and separate property, free from any claims or interest by JENNIFER. Further, if SEAN has any monies remaining in his IRA, then said monies shall be awarded to him as his sole and separate property, free from any claims or interest by JENNIFER.

2.    JENNIFER's Retirement Plans: The parties acknowledge and agree that JENNIFER has recently begun contributing to a 401(k) retirement savings plan through her employment with Advocate Christ Hospital. The parties further acknowledge and agree that JENNIFER has an IRA with a current fair market value of approximately $3,500.00. The parties agree that upon entry of a Judgment for Dissolution of Marriage, JENNIFER's benefits earned in this 401(k) retirement savings plan and all monies in her IRA shall be shall be awarded to her as her sole and separate property, free from any claims or interest by SEAN.

14

C.    <u>Vehicles</u>:

        1.    The parties acknowledge and agree that the parties own and SEAN drives a 1997 Ford Taurus with no current lien against same and which has a current fair market value of approximately $2,265.00. Upon entry of a Judgment for Dissolution of Marriage, SEAN shall be awarded this vehicle as his sole and separate property, free from any claims or interest by JENNIFER. SEAN shall be solely responsible for all costs and/or liabilities associated with the ownership of said vehicle and SEAN shall indemnify and hold harmless JENNIFER from same.

        2.    The parties acknowledge and agree that the parties own and JENNIFER drives a 1999 GMC Safari with a current lien against same in the total amount of approximately $8,000.00 and with a current fair market value of approximately $4,605.00. Upon entry of a Judgment for Dissolution of Marriage, JENNIFER shall be awarded this vehicle as her sole and separate property, free from any claims or interest by SEAN. JENNIFER shall be solely responsible for all costs and/or liabilities associated with the ownership of said vehicle and JENNIFER shall indemnify and hold harmless SEAN from same.

        3.    If necessary, upon entry of a Judgment for Dissolution of Marriage, or later if no title is currently available to sign at that time, either or both parties shall execute any documentation necessary to transfer full ownership of the other party's vehicle to that party, including but not limited to transferring the vehicles' titles.

D.    <u>Bank Accounts</u>: The parties acknowledge that they have a joint checking account which SEAN currently uses. The parties agree that upon entry of a Judgment for Dissolution of Marriage, they shall close this account, and SEAN shall be awarded any balance remaining therein at the time the account is closed. Each party shall retain as his and her sole property, his/her own checking, savings or other banking account(s) in his/her name.

E.     <u>Furniture, Furnishings, Appliances, Personal Property</u>: All the household furniture, furnishings, appliances, and other personal property have been divided by prior agreement of the parties. Each party shall keep and maintain the personal property in his/her respective possession and control as his and her sole and separate property, free from any claims or interest by the other.

F.     <u>Tax Consequences of Property Transfers</u>: All personal property transferred in this Article constitutes a division of marital property and as such, is a non-taxable transfer of marital assets.

**ARTICLE XII**
**DEBTS AND OBLIGATIONS**

The parties acknowledge and agree that they do not have any joint debts. Each party shall bear sole liability for any and all debts and liabilities which he or she has respectively incurred, and the party so incurring same shall indemnify and hold the other party harmless with respect thereto. The parties agree that if the other party is an authorized user of any credit card or store charge account in his/her name, the party shall remove the name of the other party from said card or charge account immediately. If the party is unable to remove the other party's name therefrom, then that party shall close and shall not reopen that card or charge account.

**ARTICLE XIII**
**ATTORNEYS' FEES**

JENNIFER and SEAN shall each be responsible and pay for his and her own attorneys' fees and costs of litigation, and each shall save, hold harmless and indemnify the other against any liability or responsibility therefore.

**ARTICLE XIV**
**EXECUTION CLAUSE**

Each of the parties agrees to execute and acknowledge, upon the effective date of this

Agreement, the legal documents necessary or proper to vest the titles and estates in the respective

parties as provided in this Agreement. Both parties also agree to execute at any time as the need

arises all documents which may be necessary to carry out the purposes of this Agreement. If either

party for any reason fails or refuses to execute any such documents, then this Agreement shall itself

constitute: (1) a full and effective present transfer, assignment and conveyance of all rights

designated in this Agreement to be transferred, assigned, and conveyed; and (2) a full, present and

effective relinquishment and waiver of all rights designated to be relinquished and waived under this

Agreement.

### ARTICLE XV
### GENERAL PROVISIONS

A.      Except as is otherwise provided herein, each of the parties waives and

relinquishes all rights to act as administrator or administratrix with the will annexed of the estate of

the other party and to inherit by intestate succession any of the property of which the other party may

die seized or possessed (should either of the parties die intestate). This Agreement shall operate as

a relinquishment of all rights of the surviving party hereafter to apply for letters of administration

in any form. The estate of such deceased party, if he or she dies intestate, shall descend to the heirs

at law of such deceased party, in the same manner as though the parties had never been married.

Each of the parties, respectively, reserves the right to dispose, by testament or otherwise, of his or

her property in any way that he or she may see fit, without any restriction or limitation, whatsoever,

except that this provision shall not operate nor shall it be construed as a waiver or release by either

party of the obligation of the other to fully comply with the terms of this Agreement.

B.      Except as is otherwise provided herein, each of the parties relinquishes,

releases, waives, quit claims and grants to the other (or his or her heirs, personal representatives and

assigns) all rights of inheritance, descent, distribution, community interest, and any and all other

right, title, claim, interest, and estate as SEAN or JENNIFER, widow or widower, or otherwise by reason of the marital relationship. This waiver includes rights he or she otherwise has or might have or be entitled to claim in, to, or against the property and assets of the other, real, personal, or mixed, or his or her estate, whether now owned or hereafter in any manner acquired by the other party, whether in possession or in expectancy, and whether vested or contingent.

C.    Each party further agrees for himself or herself, his or her heirs, personal representatives, and assigns, that neither of them shall at any time in the future sue the other, or his or her heirs, personal representatives, grantees, devises, or assigns, for the purpose of enforcing any or all of the rights specified in and relinquished under this paragraph. Each party agrees that in the event any suit shall be commenced, this release, when pleaded, shall be and shall constitute a complete defense to any such claim or suit so instituted by either party.

D.    Each party agrees to execute, acknowledge, and to deliver, at the request of the other party, his or her heirs, personal representatives, grantees, devises or assigns, any or all such deeds, releases, or other instruments and further assurances as may be required or reasonably requested to effect or to evidence the release, waiver, relinquishment, or extinguishment of all rights so released, waived, relinquished and extinguished under this Agreement shall operate or shall be construed as a waiver or release by either party to the other of any obligation on the part of the other to comply with the terms of this Agreement.

E.    This instrument contains the whole, entire and complete agreement made of the parties; has been examined by each of the parties, assisted by counsel of his or her respective choice; and is believed by each of them to be fair, just and equitable in all respects.

F.    This Agreement shall be binding upon and shall inure to the benefit of the heirs, executors, administrators, assigns, devises and grantees of each of the parties.

18

G.    Except for the terms herein concerning the support, custody or visitation or expenses of the minor child, this Agreement shall not be changed, modified or altered by any order of court after this Agreement has been incorporated into a Judgment of Dissolution of Marriage, or after it has become effective by the entry of any Judgment for Dissolution of Marriage.

H.    The parties agree that any future controversies which require intervention by a court of competent jurisdiction shall be litigated only in a court located in a county in which either party resides, unless the parties agree in writing to litigation in a different county prior to the filing of any petition regarding an issue in controversy.

I.    JENNIFER shall be granted the right to resume the use of her former name, "THOMAS", if she so chooses.

J.    This Agreement shall become affective and binding upon the parties only upon the entry of a Judgment for Dissolution of Marriage between the parties.


IN WITNESS WHEREOF, the parties have set their hands and seals the day and date first above written.

_____              _____
SEAN FORTSON                                                    JENNIFER FORTSON

19